Slip Op. 11-63

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PASTA ZARA SpA**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **AMERICAN ITALIAN PASTA COMPANY, DAKOTA GROWERS PASTA COMPANY, and NEW WORLD PASTA COMPANY**, <br><br> Defendant-Intervenors. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 09-00001 |

## OPINION

[Affirming remand redetermination of United States Department of Commerce in the eleventh administrative review of an antidumping duty order on certain pasta from Italy]

Dated: June 6, 2011

*Law Offices of David L. Simon* (*David L. Simon*) for plaintiff.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Carrie A. Dunsmore* and *Jane C. Dempsey*); *Daniel J. Calhoun*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Kelley Drye & Warren LLP* (*David C. Smith, Jr.* and *Paul C. Rosenthal*) for defendant-intervenors.

Stanceu, Judge: Plaintiff Pasta Zara SpA ("Zara SpA" or "Zara"), an Italian producer and

exporter of pasta products, brought this action to contest the final determination ("Final

Court No. 09-00001                                                                                                      Page 2

Results") that the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") issued to conclude the eleventh administrative review of an antidumping duty order on certain pasta from Italy (the "subject merchandise"). *Certain Pasta From Italy: Notice of Final Results of the Eleventh Admin. Review & Partial Rescission of Review*, 73 Fed. Reg. 75,400 (Dec. 11, 2008) ("*Final Results*"). Bringing three claims in this action, plaintiff challenged as unlawful: (1) the Department's determining the U.S. prices of Zara's subject merchandise on a constructed export price ("CEP") basis rather than an export price ("EP") basis, Compl. ¶¶ 10-13; (2) the Department's classifying certain accounting expenses incurred by Zara's U.S. affiliate as direct, rather than indirect, selling expenses, *id.* ¶¶ 14-18; and (3) the Department's determination that all of Zara's sales in its home market of Italy occurred at a single level of trade ("LOT"), *id.* ¶¶ 19-23.

Before the court is the redetermination that Commerce issued on remand ("Remand Redetermination") in response to the court's order in *Pasta Zara SpA v. United States*, 34 CIT __, 703 F. Supp. 2d 1317 (2010) ("*Pasta Zara*"). *Final Results of Redetermination Pursuant to Remand* (July 29, 2010) ("*Remand Redetermination*"). In *Pasta Zara*, the court sustained the Department's decision to determine U.S. price on a CEP basis. *Pasta Zara,* 34 CIT at __, 703 F. Supp. 2d at 1320-23. With respect to plaintiff's second claim, the court granted defendant's request for a voluntary remand that would allow Commerce to reconsider the question of whether the accounting expenses at issue should be classified as direct or indirect. *Id.* at __, 703 F. Supp. 2d at 1323-24. On remand, Commerce has reclassified the accounting expenses as indirect expenses and has concluded, correctly, that this change does not affect the calculation of Zara SpA's margin. *Remand Redetermination* 2-3. On plaintiff's third claim, the

**Court No. 09-00001**                                                                                                     **Page 3**

court ordered in *Pasta Zara* that Commerce reconsider its conclusion that all of Zara's home market sales occurred at a single level of trade, concluding that the Department did not conduct an adequate analysis of the issue. *Pasta Zara*, 34 CIT at __, 703 F. Supp. 2d at 1324-29. Upon reconsidering the question, Commerce determined again that Zara's home market sales comprised a single LOT but bases that determination on different findings and reasoning, which the court sustains. The court will enter judgment affirming the Remand Redetermination.

## I. BACKGROUND

The court presented background in its Opinion and Order in *Pasta Zara*. *Id.* at __, 703 F. Supp. 2d at 1319-20. Additional background is presented below as a summary and to recount events occurring since *Pasta Zara* was decided.

In the preliminary results of the eleventh review, Commerce determined for Zara SpA a preliminary weighted-average dumping margin of 10.34%. *Certain Pasta From Italy: Notice of Prelim. Results of Eleventh Antidumping Duty Admin. Review*, 73 Fed. Reg. 45,716, 45,720 (Aug. 6, 2008). In the Final Results, Commerce assigned Zara SpA a margin of 9.71%, *Final Results*, 73 Fed. Reg. at 75,401, which Commerce left unchanged in the Remand Redetermination, filed with the court on July 29, 2010, *Remand Redetermination.*

On August 30, 2010, plaintiff filed comments with the court objecting to the Remand Redetermination. Comments of Pl. Pasta Zara SpA on Final Results of Redetermination Pursuant to Remand ("Pl.'s Comments"). The same day, defendant-intervenors, who are domestic pasta producers, filed a letter supporting the Remand Redetermination. Comments in Support of the Commerce Dept.'s Final Results of Remand Redetermination. With leave of court, defendant filed a response supporting the Remand Redetermination. Def.'s Resp. to Pl.'s

**Court No. 09-00001**                                                                                              **Page 4**

Comments upon the Remand Redetermination; Def.'s Mot. for Leave to File a Resp. to Pl.'s Comments upon the Remand Redetermination.  The court heard oral argument on November 17, 2010.

## II.  DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2006), pursuant to which the court reviews actions commenced under section 516A of the Tariff Act of 1930 ("Tariff Act" or the "Act"), 19 U.S.C. § 1516a (2006), including an action contesting the final results of an administrative review that Commerce issues under section 751(a) of the Tariff Act, 19 U.S.C. § 1675(a).  In ruling on the Remand Redetermination, the court must hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

### A.  Reclassification of the Accounting Expenses as Indirect Selling Expenses

The Remand Redetermination states that "the Department finds the accounting expenses to be indirect in nature because those expenses did not result from, nor bear a direct relationship, to specific sales."  *Remand Redetermination* 2.  Commerce then concluded that the reclassification of the expenses as indirect cannot affect Zara's margin because both direct and indirect selling expenses are deducted from the CEP starting price.  *Id.* at 3 (citing section 772(d)(1)(B), (D) of the Tariff Act, 19 U.S.C. § 1677a(d)(1)(B),(D)).  Plaintiff does not disagree that indirect selling expenses are deducted from the CEP starting price but takes the occasion of the Department's change in position to challenge again the Department's determining U.S. price on a CEP basis, on the grounds that the expenses would not be deducted were U.S. price

Court No. 09-00001                                                                                          Page 5

determined on an EP basis and that Commerce, in situations not materially different from this one, has used an EP basis to determine U.S. price.  Pl.'s Comments 22-23.  Pointing out that in its comments to the Department on the draft version of the Remand Redetermination "Zara asked Commerce to reconsider its CEP decision, insofar as the agency treats Zara differently from other respondents that were in precisely the same factual posture," plaintiff argues that "Commerce's refusal to reconsider the CEP issue was unlawful, since the statutory requirement of 'fair comparisons' (19 U.S.C. § 1677b(a)) mandates that companies in the same position should be treated in the same way."  *Id.* at 2 (citing *JTEKT Corp. v. United States*, 33 CIT __, __, 675 F. Supp. 2d 1206, 1240 (2009)); *see Letter from Pasta Zara to the Sec'y of Commerce* 1-2 (July 15, 2010) (Admin. R. Doc. No. 6552) ("*Pl.'s Remand Comments*").

The question of the lawfulness of the Department's use of the CEP basis to determine U.S. price was not at issue in the Remand Redetermination, the court already having affirmed the use of the CEP basis in *Pasta Zara*, 34 CIT at __, 703 F. Supp. 2d at 1320-23.  Therefore, plaintiff's raising the CEP/EP issue in its comments to the Department on the draft version of the Remand Redetermination and to the court on the Remand Redetermination is to no avail.  Having not sought reconsideration of the court's decision affirming the use of the CEP basis, plaintiff may not relitigate the CEP/EP issue in this remand phase of the litigation.

Even were the court to consider plaintiff's comments to the court as a motion for reconsideration of the court's decision affirming the Department's decision to use the CEP basis as set forth in *Pasta Zara*, it would reject plaintiff's argument.  In *Pasta Zara*, the court sustained that decision according to specific factual findings grounded in substantial evidence on the record.  *Id.* at __, 703 F. Supp. 2d at 1320-23.  Plaintiff's argument relying on Commerce's

decisions to use the EP basis in other cases fails to address the suitability of the CEP method to the unique facts of this case.

### B.  The Department's Redetermination that All of Zara's Home Market Sales Occurred at a Single Level of Trade

Zara claimed that Commerce should have determined normal value according to the sales it made in Italy to a group of its customers (identified herein as "mass-market customers") that it described as including wholesalers, large distribution organizations, discounters, and hypermarkets. *Id.* at __, 703 F. Supp. 2d at 1324.  Considering these home market sales equivalent to its sales in the United States, Zara also identified a second, smaller group of home market sales that it wants excluded from the normal value calculation, arguing that these sales were made at a separate and more remote level of trade.  According to Zara, these sales were made to Zara's "traditional local customers," a group including "dettaglio (small mom-and-pop convenience stores of under 150 square meters), hotels and restaurants, communities (*e.g.*, monasteries) and associations (*e.g.*, sports clubs)"; all of which have single locations near the original Zara factory, very limited storage capacity, and no distribution capability, and typically buy pasta from inventory (as opposed to made-to-order) and in smaller quantities than full-pallet loads and truckloads.  *Id.* at __, 703 F. Supp. 2d at 1324 (internal quotations omitted).

In *Pasta Zara*, the court viewed as inadequate the Department's analysis, as set forth in the decision memorandum accompanying the Final Results ("Decision Memorandum"), concluding that all of Zara's home market sales occurred at a single LOT.  *Id.* at __, 703 F. Supp. 2d at 1327 (citing Issues & Decision Mem., A-475-818, ARP 6-07, at 20 (Dec. 4, 2008) (Admin. R. Doc. No. 6115) ("*Decision Mem.*")).  In the Decision Memorandum, Commerce had reasoned that Zara SpA performed similar selling activities for the different customer groups in its two

claimed LOTs, although Commerce also found with respect to the two groups that some of the selling activities were performed at "different levels of intensity." *Id*. at __, 703 F. Supp. 2d at 1326.  Rejecting Zara's argument of separate LOTs, Commerce based the normal value of Zara's subject merchandise on all of the home market sales.  The court concluded in *Pasta Zara* that the Department had not conducted the type of analysis required by section 351.412(c)(2) of the Department's regulations and by the Department's own interpretation of its regulation as set forth in the accompanying preamble ("Preamble").  *Id*. at __, 703 F. Supp. 2d at 1327-28 (citing 19 C.F.R. § 351.412(c)(2) (2009); *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,371 (May 19, 1997) ("*Preamble*")).  The regulation provides that "[t]he Secretary will determine that sales are made at different levels of trade if they are made at different marketing stages (or their equivalent)."  19 C.F.R. § 351.412(c)(2).

The Preamble clarifies that the Department considers a different marketing stage to occur where merchandise changes hands twice to reach a more remote level of trade.  *Preamble*, 62 Fed. Reg. at 27,371.  Zara's sales were made at only one marketing stage, *per se*, because Zara sold goods directly to the customers in both categories.  *Letter from Pasta Zara to the Sec'y of Commerce* 8 (Dec. 12, 2007) (Amended Conf. R. Doc. No. 15) ("*Questionnaire Resp.*").  In identifying the possibility of the "equivalent" of a separate marketing stage, the Preamble recognizes that a determination of multiple LOTs is not precluded solely by the fact that the merchandise did not change hands twice.  *Preamble*, 62 Fed. Reg. at 27,371.  The question posed, therefore, is whether the Department, in the Remand Redetermination, lawfully determined that the sales to the traditional local customers did not occur at the "equivalent" of a separate marketing stage.  *Remand Redetermination* 3-7 (citing 19 C.F.R. § 351.412(c)(2)).

**Court No. 09-00001** Page 8

According to the Preamble, the equivalent of a separate marketing stage occurs when the "seller takes on a role comparable to that of a reseller if the merchandise had changed hands twice." *Preamble*, 62 Fed. Reg. at 27,371. The Preamble adds that the marketing stage more remote from the factory "must be characterized by an additional layer of selling activities, amounting in the aggregate to a substantially different selling function." *Id.* Under the regulation, selling activities must be substantially different for a separate LOT to occur, but "[s]ome overlap in selling activities will not preclude a determination that two sales are at different stages of marketing." 19 C.F.R. § 351.412(c)(2). The Preamble further provides that "[a]lthough the type of customer will be an important indicator in identifying differences in levels of trade, the existence of different classes of customers is not sufficient to establish a difference in the levels of trade." *Preamble*, 62 Fed. Reg. at 27,371.

On remand, Commerce determined generally that many of Zara's home market selling activities served both groups of customers, *i.e.*, the traditional local customers and the mass-market customers, and that the selling activities performed solely or principally for the traditional local customers did not establish two distinct LOTs. *Remand Redetermination* 5. Commerce supported this determination with specific factual findings (discussed below), for which the court finds substantial record evidence. Commerce permissibly determined on the record as a whole that Zara's selling activities directed to its traditional local customers were not so separate from Zara's other selling activities as to constitute an "'additional layer of selling activities, amounting in the aggregate to a substantially different selling function.'" *Remand Redetermination* 7 (quoting *Preamble*, 62 Fed. Reg. at 27,371). The record evidence did not compel Commerce to decide that Zara's activities directed to the selling of pasta to the

traditional local customers were so distinct from Zara's selling activities in general as to be equivalent to those a distributor or other reseller would have performed.

Significant to the Department's determination were the findings that Zara did not perform separate storage, handling, or loading activities for its traditional local customers. First, Commerce found, and Zara does not contest, that, at one of Zara's two locations, Zara performed storage, handling, and loading for both traditional local and mass-market customers. *Remand Redetermination* 10. The fact that Zara, from the other location, shipped only to mass-market customers does not support a determination that Zara performed such activities separately for the traditional local customers. *See id.*

Commerce also found that, at the location that served both mass-market and traditional local customers, the storage, handling, and loading activities were not performed in a separate area or by separate staff. *See Mem. from Case Analysts to the File* 12 (Oct. 10, 2008) (Admin. R. Doc. No. 6065) (finding that Zara maintained no separate warehouse activities dedicated to its traditional local customers). Responding to Zara's argument that the limited storage capacity of the traditional local customers required Zara to hold goods in inventory and thereby perform the function of a distributor for these customers, Commerce found, and the record supports, that Zara held in its warehouse, palletized, and bar-coded the goods for its home market sales to customers in both groups. *Remand Redetermination* 5 (citing *Questionnaire Resp.* 52). Zara also argued that its shipments to its traditional local customers were frequently of less-than-full pallet loads, requiring the breaking down and repackaging of pallets, but Commerce reasonably concluded, in light of the evidence that the warehousing, palletizing, and bar-coding were performed for both customer groups, that this additional activity was not a substantial difference. *Id.* Moreover, the

**Court No. 09-00001**                                                                                    **Page 10**

mass-market customers also received pasta in less-than-full pallet loads that were, in the aggregate, significant on a quantity basis even though constituting a smaller percentage of the total volume of sales. *See Pl.'s Remand Comments* 14.

      Other record evidence supports Zara's claim. Zara reported in a questionnaire response that the marketing activities for the mass-market customers were performed or coordinated by the company president and that two area managers performed the marketing activities for the traditional local customers. *Letter from Pasta Zara to the Sec'y of Commerce* 12 (Apr. 8, 2008) (Admin. R. Doc. No. 5923) ("*Supplemental Questionnaire Resp.*"). The marketing activities required for each of the two customer groups were significantly different: serving the traditional local customers required personal visits for the negotiating of terms and for manual order-taking, while marketing to the mass-market customers made significant use of faxes and automated systems. Pl.'s Comments 9-10; *Supplemental Questionnaire Resp.* 12. Even more important, the record evidence demonstrates that these marketing activities were conducted by separate personnel, a fact Commerce did not refute. *Supplemental Questionnaire Resp.* 12; *Remand Redetermination* 6. The record evidence of separate and distinct marketing activities for each of the two groups of customers could support a determination that, with respect to the traditional local customers, Zara was acting similar to a reseller even though the merchandise did not change hands twice. In the Remand Redetermination, Commerce implicitly acknowledged that the marketing activities were conducted separately and in many respects were different for each customer group, but it dismissed these distinctions by stating the obvious and irrelevant conclusions that "both methods require staff to process the information" and that, regardless of

whether order-taking was manual or automated, "similar maintenance of customer relations and input data would have been necessary . . . ." *Remand Redetermination* 6.

Nevertheless, the irrelevant conclusions Commerce drew as to the separate marketing activities are not sufficient to convince the court to order the Department to reconsider its determination of a single LOT in the home market. The irrelevant conclusions are an analytical flaw, but without them the remainder of the analysis still is sufficient to support the Department's ultimate determination. The court, for this reason, views the irrelevant conclusions as inconsequential error. As discussed above, substantial evidence supports Commerce's key findings that indicate a lack of a separate selling function: Zara did not perform the storage, handling, and loading of products for the traditional local customers at a separate location or with separate staff.

In summary, the record shows that as a general matter Zara's marketing of its pasta products in Italy was conducted separately with respect to the two customer groups but that its storage, handling, and loading of these products were not. Because this record demonstrated that Zara marketed its product separately to its traditional local customers and that these customers had certain characteristics distinguishing them from the mass-market customers, Commerce permissibly might have determined that Zara took on "a role comparable to that of a reseller" with respect to the traditional local customers. *Preamble*, 62 Fed. Reg. at 27,371. However, due to the common selling activities associated with storing, handling, and loading the products, the court cannot conclude that Commerce, in applying its regulation according to the Preamble, was *required* to reach such a determination. The record as a whole presents a close question as to whether Zara's sales to its traditional local customers were "characterized by an additional *layer*

of selling activities, amounting in the aggregate to a substantially different selling *function*." *Id.* (emphasis added). On this record, the court will not re-weigh the evidence to overturn Commerce's choice.

Various other evidence relied on by Zara is less probative for the ultimate determination. Zara argues that it performed a separate delivery activity for its sales to traditional local customers because it provided a variety of delivery options for these sales, including delivery in its own vans for a greater percentage of sales relative to sales to the mass-market customers. Pl.'s Comments 15-16. This argument is unconvincing, however, because the volume of merchandise delivered in Zara's vans was comparable between the customer groups, even if the mass-market customers took this form of delivery less frequently. *Id.*

Next, while Zara pointed out that its traditional local customers typically bought Zara brand pasta as opposed to the private-label, made-to-order pasta bought by some mass-market customers, Commerce appropriately gave this fact little weight, observing that both customer groups bought Zara-branded products. *Remand Redetermination* 5. The difference in buying patterns is additional evidence supporting a finding that the two customer groups were distinguished from one another in various ways and a finding that Zara's marketing to each group had distinct characteristics. But such findings, which the court addressed previously, do not compel a determination of a separate, more remote LOT. Similarly, Commerce found that payment methods and collection activities differed to some extent between the two customer groups, *see Remand Redetermination* 7, but this finding, although indicating that the selling activities as to each group were not precisely the same, does not diminish the significance of the findings of substantial commonality in the activities of storage, handling, and loading. Based on

**Court No. 09-00001**  Page 13

those findings and the accompanying reasoning, the court sustains the Department's determination that all of Zara's home market sales occurred at a single level of trade.

### III.  CONCLUSION

The court concludes that Commerce may reclassify the accounting expenses as indirect selling expenses, that plaintiff may not challenge in its comments on the Remand Redetermination the Department's determining the U.S. price of the subject merchandise using a CEP basis, and that Commerce acted lawfully in determining that Zara's home market sales occurred at a single level of trade.  The court will affirm the Remand Redetermination and enter judgment accordingly.

                                  /s/ Timothy C. Stanceu  
                                  Timothy C. Stanceu  
                                  Judge

Dated: June 6, 2011  
       New York, New York

Slip Op. 11-63

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PASTA ZARA SpA**,<br><br>                Plaintiff,<br><br>                v.<br><br>**UNITED STATES**,<br><br>                Defendant,<br><br>                and<br><br>**AMERICAN ITALIAN PASTA COMPANY, DAKOTA GROWERS PASTA COMPANY, and NEW WORLD PASTA COMPANY**,<br><br>                Defendant-Intervenors. | Before: Timothy C. Stanceu, Judge<br><br>Court No. 09-00001 |

## JUDGMENT

For the reasons set forth in *Pasta Zara SpA v. United States*, 35 CIT __, Slip Op. 11-63 (June 6, 2011), regarding *Certain Pasta From Italy: Notice of Final Results of the Eleventh Admin. Review & Partial Rescission of Review*, 73 Fed. Reg. 75,400 (Dec. 11, 2008), and the *Final Results of Redetermination Pursuant to Remand* (July 29, 2010) ("Remand Redetermination"), and upon consideration of all submissions herein, it is hereby

**ORDERED** that the Remand Redetermination be, and hereby is, AFFIRMED.

                                                                           /s/ Timothy C. Stanceu
                                                                           Timothy C. Stanceu
                                                                          Judge

Dated: June 6, 2011
      New York, New York